**EXHIBIT 1**

1    LYNN HUBBARD III, ESQ., SBN 69773
     SCOTTLYNN HUBBARD IV, ESQ., SBN 212970
2    **DISABLED ADVOCACY GROUP, APLC**
     12 WILLIAMSBURG LANE
3    CHICO, CA, 95926
     (530) 895-3252
4
5    Attorneys for Plaintiff, DIANE CROSS

6

7                    UNITED STATES DISTRICT COURT

8                   SOUTHERN DISTRICT OF CALIFORNIA

9

10   DIANE CROSS,                          )  Case No.: 07cv0486 J (LSP)
                                           )
11              Plaintiff,                 )
                                           )
12                                         )  **Plaintiff's Opposition to Defendants**
                                           )  **ValVista South, LLC and ValVista**
13   v.                                    )  **North, LLC's Motion for an Order for a**
                                           )  **More Definite Statement; an Order**
14   BOSTON MARKET CORPORATION             )  **Declining Supplemental Jurisdiction**
     dba BOSTON MARKET #1167; et al,       )  **Over Plaintiff's State Claims; an Order**
15                                         )  **Dismissing Claims Against ValVista for**
                                           )  **Failure to State a Claim; and, an Order**
16              Defendants                 )  **Setting an Evidentiary Hearing on**
                                           )  **Article III Standing**
17                                         )
                                           )
18                                         )  Date:    May 29, 2007
                                           )  Time:    9:00 a.m.
19                                         )  Room:   12
                                           )
20                                         )  **Hon. Napoleon A. Jones, Jr.**
                                           )
21   _____)

22

23

24

25

26

27

28

                                    -1-

**EXHIBIT /**

# I. INTRODUCTION

Defendants ValVista South, LLC and ValVista North, LLC (hereinafter, collectively "ValVista") move this Court for: an order for a more definite statement; an order declining supplemental jurisdiction over plaintiff Diane Cross' state claims; an order dismissing Cross' claims against Valvista for failure to state a claim; and an order setting an evidentiary hearing on the issue of Cross' Article III standing.  (To date, numerous other defendants in this action have joined in this motion.  They are:  Boston Market Corporation dba Boston Market #1167; System Capital Real Property Corporation; The Krausz Companies, Inc.; Krausz Vista, LLC; Krausz Vista Two, LLC; and, Michaels Stores, Inc. dba Michaels #9538.  Hereinafter, Cross will refer to all defendants collectively, i.e. "defendants," unless referring to a specific defendant, at which time Cross will identify that defendant by name.)

Defendants' arguments are without merit.  Plaintiff will deal with these arguments seriatim.

# II.  DISCUSSION

**A.    More Definite Statement**

**1.    Dates of Cross' Visits**

Facts regarding the specific dates and times of Cross' visits to defendants' properties at issue in this matter are easily discerned through the process of discovery. Cross has done all she needs to do at this stage and pursuant to the liberal pleading standards of Fed. R. Civ. P. 8; she has alleged visiting the subject properties during the statutory period.  However, Cross is more than happy to amend her complaint under the liberal pleading standards of Fed. R. Civ. P. 8 to indicate – and thereby allege – the specific dates of her visits to defendants' businesses, and would even attach documentary proof of said visits (in the form of receipts) if this Court deems it necessary to comply with the liberal pleading standards of Rule 8.

Furthermore, Cross also must point out a glaring legal error on the part of ValVista.  ValVista claims that it "is not liable for visits which occurred before" it

-2-

1  acquired an ownership interest in the property, which was approximately two months

2  prior to the filing of the complaint. Presumably, ValVista is arguing that unless Cross

3  visited in the two-month time period between when ValVista acquired an ownership

4  interest and the filing of the complaint, ValVista cannot possibly be guilty of

5  discrimination, and should be allowed to walk scot-free. There are two problems with

6  this argument.

7    First, for support, ValVista points to a *Florida* district court case, *Rodriguez v.*

8  *Investco*, 305 F.Supp.2d 1278 (M.D. Fla. 2004). This court ruled that since a

9  defendant who acquired a property interest in the subject property did so after plaintiff

10 Rodriguez visited the property, defendant could not be held liable under the ADA. The

11 reasoned thusly (and as cited by ValVista in their moving papers):

12    ...In light of the ADA's plain language, the **intentional
13    discrimination** evidenced when one fails to abide by ADA
      accessibility guidelines can only be the **intentional discrimination** of
14    a person who designs and constructs a place of public accommodation
15    or causes that design or construction to be done.

16 *Rodriguez*, 305 F.Supp. at 1282-83 (emphasis added). According to this Florida court,

17 defendant Investco merely purchased an existing non-compliant facility. For whatever

18 reason – and contrary to holdings across the country – this Florida court found a

19 requirement of *intentional* discrimination in order to find a violation of the ADA.

20    However, that is most certainly **not** the law in the Ninth Circuit. As the Ninth

21 Circuit has so succinctly stated: "It is undisputed that a plaintiff need not show

22 intentional discrimination in order to make out a violation of the ADA." *Lentini v.*

23 *California Center for the Arts, Escondido,* 370 F.3d 837, 846 (9th Cir. 2004).

24 ValVista's reliance on *Rodriguez* is misguided. It matters little whether ValVista

25 *intended* for the design or construction of the subject property to be the way it is

26 currently.

27    Furthermore, ValVista is also incorrect in its none-too-subtle assertion that since

28 Cross potentially visited prior to its acquisition of any property interest in the subject

-3-

1  property, is has no liability whatsoever.  This is incorrect.  At this point, now that

2  ValVista *does* possess a property interest, issues of liability do in fact attach: firstly,

3  ValVista now has a responsibility to remove architectural barriers to access where it is

4  readily achievable to do so, 42 U.S.C. §12182(b)(2)(A)(iv); and secondly, should this

5  Court eventually rule for Ms. Cross and issue injunctive relief pursuant to the ADA,

6  ValVista would naturally be a necessary party in order to carry out that injunctive relief

7  with respect to the property it owns, leases and/or otherwise controls.

8       At any rate, Cross is more than willing to amend her complaint should this Court

9  find it too ambiguous or unclear as to when she visited, and should this Court find that

10 such information would not available to ValVista through the process of discovery.

11        **2.    The Access Barriers Complained of by Cross are Not Ambiguous**

12       Defendants next argue that they cannot discern from the complaint which access

13 barriers Cross is asserting; or, rather, and more accurately, they cannot discern which

14 barriers plaintiff is *not* asserting.  *See* Defendants' Motion, p. 6.  Apparently, the

15 confusion lies in the fact that Cross has identified barriers that, while not affecting her

16 directly (that is, they are unrelated to her own disability), are in fact violations of the

17 ADA.  As the complaint itself makes clear, Ms. Cross identified these barriers as a

18 courtesy to defendants; she clearly states that she is not seeking to remove those barriers

19 not related to her disability.  *See* Complaint, Docket Item #1, ¶ 79.  Defendants'

20 argument is as disingenuous as it is meritless.

21       Ms. Cross does not "hide the ball" as to what her disability is: "Cross is a

22 paraplegic as a result of an automobile accident and requires the use of an electric

23 wheelchair and mobility-equipped vehicle when traveling in public." *See id.*, at ¶17.

24 She does not claim to be hearing impaired.  She does not claim to have a vision

25 impairment.  Obviously, those barriers that she is *not* seeking to remove would be those

26 that relate to such disabilities as hearing and vision impairment.  The **overwhelming**

27 majority of the barriers asserted in the exhibits attached to plaintiff's complaint relate to

28 issues that present barriers and obstacles to a person with a mobility disability, like Ms.

-4-

1   Cross.  However, a barrier such as a lack of restroom signage with Braille identification

2   would be an example of a barrier that does not relate to Ms. Cross, but which she

3   identified as a courtesy to defendants.  This is not rocket science.

4        However, if this Court so wishes, and deems it necessary pursuant to the liberal

5   pleading standards of Rule 8, Ms. Cross will amend her Complaint and specifically

6   identify those barriers that she identified as a courtesy but which she is not seeking to

7   remove.

8       **3.    Identification of Where the Barriers are is Not Ambiguous**

9        Finally, defendants complain that they "cannot discern the exact location of [the]

10  barriers and therefore whether these barriers are in areas within its ownership and

11  control." *See* Defendants' Motion, p. 7.  With all due respect, this is a ludicrous

12  argument.

13       To begin with, as defendants admit in their moving papers, Cross attached ten

14  (10) separate exhibits to her Complaint; one exhibit for *each* property and/or business.

15  Each exhibit identified barriers on that property, or within that business.  Furthermore,

16  plaintiff's complaint specifically addresses which defendants she contends own,

17  operate, or have control over each property and/or business.  *See* Complaint, Docket

18  Item #1, ¶¶ 1, 2. Attaching such a detailed list of barriers – one exhibit for each business

19  and/or property – goes far beyond the "short and plain statement" of allegations

20  required by Fed. R. Civ. P. 8.

21       Presumably each defendant is cognizant of the property interest it possesses,

22  and/or which business it owns and/or operates.  (Based on defendants' arguments,

23  perhaps plaintiff presumes too much.)  Cross simply cannot comprehend how, armed

24  with this information, defendants are at a loss to identify the location of asserted

25  barriers.   For example, Exhibit F of the Complaint identifies barriers at the Michael's

26  retail establishment.  The third page of this Exhibit (or, page 116 of the Complaint)

27  identifies barriers encountered or known to Cross that exist within the women's

28  restroom. *See* Complaint, Docket Item # 1, Exhibit F attached thereto.  Plaintiff assumes

-5-

1   that a student in junior high school could deduce that this refers to the women's

2   restroom at *Michael's*, and not the restroom located within (a) different defendants'

3   business and/or property, say, for example, Target.  Is this truly an issue for defendants'

4   learned counsel?

5       This argument is without merit.

6   **B.    Supplemental Jurisdiction**

7       Defendants' argument here centers on the recent state appellate court decision of

8   *Gunther v. Lin*, 144 Cal.App.4[th] 223 (2006), as well as a recent case from within this

9   District, *Cross v. Pacific Coast Plaza Invest.*, No. 06cv2543 JM (RBB) (S.D.Cal. Mar.

10  6, 2007).

11      However, it is Cross' belief that *Gunther*: 1) misinterpreted statutes at issue, as

12  well as ignored the statutes' clear legislative history; and 2) is wrong on the law.  Given

13  the importance of this issue, Cross will spend considerable time analyzing *Gunther*.

14      **1.    *Gunther* Misinterprets Both the Language of the Statues at Issue as**

15          **Well as Ignores Legislative History**

16      Recently, in the Eastern District, Senior District Court Judge Lawrence Karlton

17  offered a thorough and succinct analysis of the *Gunther* case, and whether it should be

18  interpreted to mean that Unruh Act requires intent, even when an ADA violation has

19  been proven.[1]  This analysis, which takes apart *Gunter* bit by bit, is eminently

20  applicable here, and is a strong and reasoned counterpoint to this Court's recent

21  decision in the *Cross* case cited by defendants.

22          **a.    *Gunther* is Not Controlling and it Directly Contradicts Prior Ninth**

23              **Circuit Law**

24      As an initial matter, Judge Karlton notes that when a state's highest court

25  declines to rule on an issue of state law, a federal court must use its own best judgment

26

27

28  1    Cross has attached a copy of Judge Karlton's Order to his concurrently filed Request for
    Judicial Notice for the convenience of the Court.

| PLAINTIFF'S OPPOSITION TO | *CROSS V. BOSTON MARKET CORPORATION, ET AL.* |
|---|---|
| DEFENDANTS' MOTION | 07cv0486 J (LSP) |

1  to discern how that high court would decide.  As the California Supreme Court recently

2  declined to hear the appeal of *Gunther*, the decision of the California appellate court in

3  *Gunther* is not controlling on a federal court.  *See Wilson v. Haria and Gogri Corp. dba*

4  *Jack-In-The-Box #551*, Case No. CIV.S-05-01239 LKK-DAD, March 22, 2007, To Be

5  Published (hereinafter "*Jack-in-the-Box*"), p. 13-14.  Rather, "a federal court sitting in

6  diversity must use its own best judgment to predict how the [California Supreme] court

7  would decide the issue." *Id.* at 13, *citing Takahashi v. Loomis Armored Car Serv.*, 625

8  F.2d 314, 316 (9th Cir. 1980).

9      Furthermore, this Court cannot presume that because California's highest court

10  declined to hear the *Gunther* appeal, *Gunther* is the law of the land.  A denial of review

11  may occur for many reasons: for example, a lack of appellate split on the issue at the

12  present time.  Such denial therefore cannot be taken as California's Supreme Court's

13  approval of *Gunther*. *See Digenova v. State Bd. of Educ.* 57 Cal.2d 167, 178 (1962).

14      Judge Karlton – like the court in *Cross v. Pacific Coast Plaza* – noted that

15  *Gunther* directly contradicts the Ninth Circuit case of *Lentini v. Calif. Cntr. for the Arts*,

16  270 F.Supp.3d 837, 847 (9th Cir. 2004), which held that because a disabled plaintiff

17  need not prove discriminatory intent under the ADA, plaintiffs also need not prove

18  discriminatory intent under the Unruh Act, since the California legislature amended the

19  Act to incorporate the ADA standards of liability. *See Jack-in-the-Box*, at 14.

20      Judge Karlton then framed the issue:  Whether, therefore, a federal court is bound

21  by *Lentini*, or is obligated to reconsider *Lentini* in light of *Gunther*?  As Judge Karlton

22  then observed, answering this question was not necessary, as a statutory and legislative

23  history analysis of the Unruh Act convincingly shows that *Gunther* is not the law of the

24  state, and federal courts are free to disregard intermediate state court decisions where

25  there is "convincing evidence" that the state's highest court would decide differently.

26  *Id.* at 15, *citing In re Watts*, 298 F.3d 1077, 1083 (9th Cir. 2002).

27      Cross will now discuss this "convincing evidence."

28

**b.    The Unruh Act Includes BOTH Sections 51 AND 52**

As Judge Karlton notes, *Gunther's* [legal] reasoning is "flawed from the outset," because the linchpin of the *Gunther* court analysis is its assertion that the Unruh Act is comprised solely of Calif. Civil Code section 51. *See Gunther v. Lin*, 50 Cal.Rptr.3d 317, 320 (Cal.App. 4 Dist., 2006). However, asserting that the Unruh Act consists *only* of section 51 would mean that the enforcement section of the Unruh Act – Calif. Civil Code section 52 – is *not* part of the Unruh Act. This inconsistency is not explained – or reasonably dealt with – by the *Gunther* court. Indeed, as Judge Karlton notes in *Jack-in-the-Box*, the case that *Gunther* so heavily relies upon, *Harris v. Capital Growth Investors XIV*, (1991) 52 Cal.3d 1142, even acknowledges that the Unruh Act encompasses **both** sections 51 ***and*** 52. *See Jack-in-the-Box*, at 17, *citing Harris*, 52 Cal.3d at 1172 (where the *Harris* court stated that section 52 is "the language of the Act").

Therefore, when the California legislature in 1992 amended the Unruh Act to incorporate the ADA at section 51(f), there can be no doubt that the legislature also intended that victims of ADA discrimination would be entitled to the remedies provided by the enforcement section of section 52.

Simply put, sections 51 and 52 cannot be divorced – they both comprise the Unruh Act. Yet *Gunther's* analysis attempts to do just that – separate the Act. Under *Gunther* an ADA violation is a violation of the Unruh Act, but section 52 does not apply unless intent is proven. As Judge Karlton eloquently explains, this is flawed reasoning. If section 51 was amended by the legislature to include the standards of liability of the ADA – which clearly does not require discriminatory intent – then section 52 was obviously part of this amendment process. Therefore there is no intent required when an ADA violation is shown in order to trigger section 52's enforcement provision.

Simply put, if *Gunther's* analysis is correct – section 51 can be amended without any effect on section 52 – then the California's Legislature's amending of the Unruh

-8-

1    Act to include violations of the ADA **is rendered completely meaningless**.

2               *c.*    ***Legislative History***

3         Indeed, the most powerful part of Judge Karlton's analysis involves an

4    examination of the history of the legislation leading up to the 1992 amendment of

5    the Unruh Act – <u>what, exactly, did the California Legislature intend</u>?  This is

6    essential, because California's Supreme Court has explained that analysis of state

7    statutes begins with "the fundamental premise that the objective of statutory

8    interpretation is to *ascertain and effectuate legislative intent*." *Kimmel v. Goland*,

9    51 Cal.3d 202, 208 (1990) (emphasis added).   As usual, Judge Karlton's finding

10   regarding this is clear and to the point:

11              The legislative history of Section 51(f) reveals an intent to include
12              **unintentional** disability discrimination within the scope of the Unruh
                Act. The Assembly Committee on Judiciary report on AB 1077 (as
13              amended January 2, 1992, p.2) stated that the bill would: 'Make a
14              violation of the ADA a violation of the Unruh Act. Thereby providing
                persons injured by a violation of the ADA with the remedies provided
15              by the Unruh Act (e.g., right of private action for damages).'

16
     *Jack-in-the-Box*, at 18 (emphasis added).   Judge Karlton also noted that the California
17
     Senate Committee on Judiciary evinced the same intent:
18
                [T]his bill would make a violation of the ADA a violation of the Unruh
19              Act. Thereby providing persons injured by a violation of the ADA with
20              the remedies provided by the Unruh Act (e.g., right of private action for
                damages, including punitive damages).
21

22   *Id.* at 18, n.14.   In neither of these statements do either the Assembly or Senate

23   Committee state – or even imply – that somehow the standards of ADA liability,

24   where no showing of discriminatory intent is required, would somehow be changed so

25   that the intent requirement of Cal. Civ. Code section 52 would be the new standard, or

26   that, conversely, intent would still be required under the Unruh Act even though none

27   is required under the ADA.

28         Logically, and legally, *Gunther* makes no sense.  It leaves the very real scenario

-9-

1  of a disabled plaintiff proving an ADA violation, and therefore an Unruh violation, but

2  yet not able to avail himself to the remedies of the Unruh Act unless intent is proven.

3  This completely undermines the purpose of the legislature's amending of the Act,

4  which obviously was to **broaden the scope of the Unruh Act** to include violations of

5  the ADA against disabled persons.  (And it goes without saying that this also

6  undermines the standards of ADA liability, where correcting *benevolent inaction* is

7  just as important as correcting intentional discriminatory actions, and why, therefore, a

8  showing of intent is not required.)  If a remedy under the Unruh Act is unavailable

9  unless intent is shown, then the legislature's action would truly be "all bark and no

10 bite."[2]

11              *d.    Plain Language*

12         Judge Karlton continues to eviscerate *Gunther* by applying the analyses of liberal

13 construction and other canons of statutory construction (*see Jack-in-the-Box*, pp. 20-

14 26), but, as usual, the simplest is almost always the most powerful.

15         Under any objective view, by applying the doctrine of "plain meaning," or

16 assigning the "usual and ordinary meanings" of words to the statute at issue (*see Wells

17 v. One2One Learning Found.*, 29 Cal. 4th 1164, 1170 (2006)), the amended language of

18 the Unruh Act could not possibly be clearer: "A violation of any right of any individual

19 under the [ADA] shall also constitute a violation of this section." Cal. Civ. Code

20 § 51(f).  Full stop, end of story.  If the ADA is violated, then the Unruh Act (which as

21 discussed above, includes section 52) is violated as well, with no further inquiry into

22 intent necessary or required.

23         Again, if this is not the case – that is, if the ADA can be violated but not the

24 ─────────────────

25 2      Also of importance to the legislative history is a letter to the author of the amendment bill that
    directly addressed the issue of intent, and which complained that the amendment provided disabled
26 persons injured by the ADA with the remedies of the Unruh Act, with no intent required. *See Jack-*
    *in-the-Box*, at 18.  This letter clearly had no impact on the amendment. Thus, the author of the bill
27 was in fact well aware that amending the Unruh Act as planned meant that a violation of the ADA

28

1  Unruh Act, as laid bare by the *Gunther* analysis – then the California legislature's 1992

2  amending of the Unruh Act is meaningless.

3      **2.    Even Without a Statutory Analysis, *Gunther* is WRONG on the Law**

4      Plainly stated, there is no requirement of intent to discriminate under either state

5  or federal law, the *Gunther* case notwithstanding.  This is even a truer statement when

6  considered in light of the statutory analysis of the Unruh Act, as discussed *supra*.

7      First, there is a distinction between (1) ***intentional conduct*** on the one hand and

8  (2) ***discriminatory intent*** on the other hand.  They are not the same and should not be

9  confused or conflated.  There are four published decisions that need to be harmonized

10  to understand the state of the law with respect to the Unruh Civil Rights Act.  Those

11  cases are: *Harris v. Capital Growth Investors XIV*, (1991) 52 Cal.3d 1142, 278

12  Cal.Rptr. 614, 805 P.2d 873; *Koire v. Metro Car Wash*  (1985) 40 Cal.3d 24, 707 P.2d

13  195, 219 Cal.Rptr. 133; *Modern Development Co. v. Navigators, Ins. Co.* (2nd Dist.

14  2003) 111 Cal.App.4th 932, 4 Cal.Rptr.3d 528; and *Gunther v. Lin*.

15      Again, when analyzed in light of a proper statutory analysis of the Unruh Act –

16  one that takes into account the all-important intent of the California Legislature – these

17  cases do not conflict with each other, and also do not conflict with *Lentini*.  The *Harris*

18  case, in particular, is relevant because it is the case upon which *Gunther* relies, and it

19  seemingly conflicts with an earlier California Supreme Court case, *Koire*.

20      First, let us begin with the highest authority on state law.  The California

21  Supreme Court has ruled that there is **no need to establish discriminatory intent**

22  **under the Unruh Civil Rights Act**.  *See Koire v. Metro Car Wash*, 40 Cal.3d 24, 707

23  P.2d 195, 219 Cal.Rptr. 133 (1985).  In *Koire*, the plaintiff was challenging the practice

24  of a car wash in providing for cheaper car washes for women on "ladies' days" and,

25  therefore, discriminating against men on those days.  The trial court found "no intent"

26

27

28  was a violation of the Unruh Act with all remedies of said Act available, <u>regardless of intent</u>.  Indeed, this is what the author of the bill –as well as the Senate and Assembly – <u>intended</u>.

-11-

1    to exclude or to make men "feel unwelcome, unaccepted or undesired." *Koire*, 40

2    Cal.3d at 33.    But the California Supreme Court, found a violation of the law and

3    pointed out that: "**discriminatory *intent* is not required by the Unruh Act . . .**

4    Plaintiff was entitled to equal treatment, no matter what his sex, and ***regardless of***

5    ***defendants' intent in denying him equal treatment***." *Id.* (emphasis added, internal

6    quotations removed).    There could not be a more clear statement of the law:    **There is**

7    **no need to establish an intent to exclude**. *See also Lentini v. California Center for the*

8    *Arts, Escondido*, 370 F.3d 837, 847 (9th Cir. 2004) ("We find that . . . no showing of

9    intentional discrimination is required where the Unruh Act violation is premised on an

10    ADA violation.")

11        Given this clear statement of the law by the California Supreme Court (and the

12    Ninth Circuit in *Lentini*), one must then ask how we harmonize the subsequent

13    California Supreme Court holding in *Harris v. Capital Growth Investors XIV* (1991)

14    52 Cal.3d 1142 (and upon which the *Gunther* court so heavily relied, and by extension,

15    defendants in the instant motion), that, "the language of the Act suggests that

16    intentional acts of discrimination, not disparate impact, was the object of the

17    legislation" or "the damages provision . . . reveals a desire to punish intentional and

18    morally offensive conduct" or "we hold that a plaintiff seeking to establish a case under

19    the Unruh Act must plead and prove intentional discrimination in public

20    accommodations in violation of the terms of the Act. A disparate impact analysis or test

21    does not apply to Unruh Act claims." *Id.* at 1172 and 1175.

22        A key to harmonizing the statement, "**discriminatory intent is not required**"

23    (*Koire*) with "**a plaintiff must prove intentional discrimination**" (*Harris*) was

24    revealed in a published decision that has had great practical impact in these

25    ADA/Unruh cases: *Modern Development Co. v. Navigators, Ins. Co.* (2nd Dist. 2003)

26    111 Cal.App.4th 932, 4 Cal.Rptr.3d 528.    In *Modern Development*, the court was faced

27    with this very question: what is intentional conduct under the ADA and the Unruh Civil

28    Rights Act?    (The court needed to resolve this question in order to decide whether the

-12-

1   defendant insurance company had a duty to defend: if the conduct of plaintiff Modern

2   Development was accidental, the company had a duty to defend; if intentional, then no

3   duty to defend.)  The *Modern Development* court found that "as a matter of law" the

4   inaccessible restrooms were "intentional conduct" and reasoned:

6           The complaint alleged that the Swap Meet failed to comply with various
7       antidiscrimination laws relating to the disabled and that because of the
        resulting lack of access he was injured. These events are not covered
8       events under The Policy because they do not constitute "accidents" or
9       "occurrences" as such terms are defined in the Policy. As argued by
        Navigators, Moreno's alleged injuries were caused by the architectural
10      configuration of the Swap Meet and Modern Development's alleged
11      failure to remove architectural barriers, not by an accident. **The Swap
        Meet <u>intended</u> for the bathrooms to be configured as they were**. The
12      result is that the incident involving Mr. Moreno is not a covered event.

14  Id. at 941.  Thus, under *Modern Development*, a plaintiff does not need to prove that the

15  defendant harbored some sort of *animus* towards the disabled.  Instead, the intentional

16  discrimination required under the law (i.e. under *Harris*) is <u>the intention to present the</u>

17  <u>architectural layout as it exists</u> (discriminatory or not).  In *Modern Development*, the

18  court found that such intent was present based on the architectural configuration of the

19  Swap Meet.  This finding jibes with both *Koire* ("discriminatory intent is not required")

20  and *Harris* ("a plaintiff must prove intentional discrimination").

21          In fact, this fits the statutory scheme perfectly.  Under the Americans With

22  Disabilities Act, it is an act of discrimination to "fail to remove" certain barriers.  *See*

23  42 U.S.C. § 12182(b)(2)(A)(iv).  The Unruh Civil Rights Act has incorporated that

24  provision and, therefore, the failure to remove certain barriers is a violation of the

25  Unruh Civil Rights Act.  *See* Cal. Civ. § 51(f).  In light of the *Koire/Harris/Modern*

26  trifecta, we should say that it is a violation of the Unruh Civil Rights Act where there is

27  an *intentional* decision to not remove barriers, or, similarly, an intention to present the

28  architectural layout as it exists.

1    This harmonization does justice to each of the *Koire/Harris/Modern* decisions.

2  Moreover, it helps make sense of a poorly worded *Gunther* decision.  In *Gunther*, the

3  plaintiff had complained about two violations: (1) lack of wrapped plumbing and (2) a

4  non-compliant mirror. After considering the evidence, the *Gunther* court found that:

6          There is also no question that defendant Lin never intended to violate
7          the ADA. In his answer to Gunther's complaint Lin claimed that
           Gunther had entered the restroom "before our handyman had finished
8          his work" of wrapping insulation around the pipe under the sink.
           Moreover, normally the restroom never has mirrors for anybody
9          (because the mirror was subject to vandalism); an employee simply
10         hung one by mistake.

11  Id. at *4.

12    Thus, because defendant Lin had *intended* that there be wrapped plumbing and

13  had *intended* that there not be any mirror, the "violations" complained of by plaintiff

14  Gunther were *un*intentional. In other words, the "intentionality" addressed by the

15  *Gunther* court deals with whether the defendant intended its property to be the way that

16  it was — not that defendant Lin had to desire to exclude persons with disabilities or

17  treat them differently. In *Gunther*, the defendant did NOT intend that there be a mirror

18  and did NOT intend that its plumbing be exposed and, therefore, the *Gunther* court

19  found no violation.

20    In the present case, therefore, the parties must examine whether the various

21  defendants have intended to maintain the subject properties without, *e.g.*, accessible

22  parking, accessible paths of travel, and accessible restrooms (among other violations)

23  since effective business start-up dates, acquirement of ownership interests, or since

24  enactment of the ADA.  The question is ***not*** whether the various defendants here

25  intended to specifically discriminate against disabled persons such as Cross; that is, the

26  question is not whether defendant possessed discriminatory animus.  Rather, the

27  question is whether a defendant <u>intended</u> to design the subject property in its current

28  state, which design happens to deny full and equal access to disabled persons such as

-14-

1   Cross, or intended to *not* remove architectural barriers where such removal was readily

2   achievable as required by law.

3       Cross urges this Court to reject the narrow and self-serving interpretation urged

4   by ValVista and the other joined defendants in this motion, and interpret the law

5   consistent with the published decisions, as well as based on sound canons of statute

6   construction, as explicated by Judge Karlton.  Regarding the Unruh Civil Rights Act,

7   the California "Legislature's desire to banish [discrimination] from California's

8   community life has led [the California Supreme Court] to interpret the Act's coverage

9   **'in the broadest sense reasonably possible.'"** *Isbister v. Boys' Club of Santa Cruz,*

10   (1985) 40 Cal.3d 72, 75-76, 219 (emphasis added), *quoting Burks v. Poppy*

11   *Construction Co.,* (1962) 57 Cal.2d 463, 468, 20.

12       After all, it is in that very spirit of interpreting the Act's coverage 'in the broadest

13   sense reasonably possible," that Judge Karlton stated: "Furthermore, the court finds that

14   the issue of state law presented by the instant action is not particularly novel or

15   complex in light of the overwhelming body of case law finding that proof of intent is

16   not required [under the Unruh Act when an ADA violation is show]."   *Gunther* is an

17   aberration, not the law.

18   **C.**   **Since ValVista Now Possesses a Property Interest in the Subject Property it**

19       **is a Necessary Party to this Action and it Can be Held Liable Under the**

20       **ADA & State-Pled Statutes**

21       [Note: It is not clear whether it is defendant ValVista North or defendant

22   ValVista South that is making this argument, therefore Cross will assume it is both

23   defendants, collectively referred to as "ValVista".]

24       ValVista, relying once again on the Florida district court case of *Rodriguez v.*

25   *Investco*, 305 F.Supp.2d 1278 (M.D. Fla.2004), argues that Cross has failed to state a

26   claim upon which relief can be granted as to ValVista because ValVista "merely

27   purchased an existing non-compliant property"; it therefore "cannot be held liable for

28   violating the ADA." *See* Defendants' Motion, pp. 10-11.  This argument is specious,

-15-

1    and Cross has already effectively dealt with it, and with the *Rodriguez* case, *supra*,

2    Section II (A)(1).

3        However, it bears repeating that ValVista is incorrect in its none-too-subtle

4    assertion that since Cross potentially visited prior to its acquisition of any property

5    interest in the subject property, it has no liability whatsoever since it just acquired an

6    existing non-compliant property. This is incorrect. At this point, now that ValVista

7    *does* possess a property interest, issues of liability do in fact attach: firstly, ValVista

8    now has a responsibility to remove architectural barriers to access where it is readily

9    achievable to do so, 42 U.S.C. §12182(b)(2)(A)(iv), and where Cross has asserted that

10   she is deterred from visiting the subject property until such barriers are removed, as she

11   has in the instant matter (*see* Complaint, Docket Item #1, ¶¶ 31, 36, 41, 46, 51, 56,

12   61,66, 71, and 76); and secondly, should this Court eventually rule for Ms. Cross and

13   issue injunctive relief pursuant to the ADA, ValVista would naturally be a necessary

14   party in order to carry out that injunctive relief with respect to the property it owns,

15   leases and/or otherwise controls.

16   **D.    Cross Has Established Article III Standing at this Stage of the Litigation**

17       Finally, defendants argue that this Court must order an evidentiary hearing so

18   that Cross can prove she has Article III standing. Furthermore, defendants argue that

19   they should be able to conduct discovery to this end, while at the same time discovery

20   should remain stayed as to Cross. *See* Defendants' Motion, pp.11-14.

21       Although defendants cite to the three prongs required to establish Article III

22   standing, defendants utterly fail to substantially address any of them with undisputed

23   facts. What defendants really want is permission to conduct a fishing expedition, while

24   at the same time preventing plaintiff Cross from pursuing her case through discovery.

25   It is premature, to say the least, to at this point allow defendants to halt plaintiff's case

26   while they pursue a piscatorial expedition for facts – any facts – that will support the

27   theory that Cross lacks Article III standing.

28       Furthermore, contrary to defendants' statement that in such a challenge to

-16-

standing "the allegations of a complaint are **not** presumed true" (Defendants' Motion, p. 11, emphasis in original), when the basis for a district court's jurisdiction is related to the relief sought, then the allegations of the complaint are in actuality assumed to be true *unless* controverted by undisputed facts in the record. *See, e.g., Cross v. Pacific Coast Plaza Invest.*, Case No. 06cv2543 JM (RBB), Order Denying Defendant Bed Bath & Beyond's Motion for Order Setting Evidentiary Hearing On The Issue Of Article III Standing (March 23, 2007, S.D. Cal.), pp. 3-4 (denying motion, and finding that at the pleading stage – since a plaintiff need only make sufficient allegations of injury – alleging visiting defendant's business, encountering barriers which caused injury, and being deterred from returning due to the barriers, was sufficient to establish standing at the pleading stage);[3] *Organization for Advancement of Minorities with Disabilities v. Brick Oven Restaurant*, 406 F.Supp.2d 1120, 1126 n.5 (S.D. Cal. 2005) (finding that, "where the basis for a district court's jurisdiction is intertwined with the substantive relief sought, the court 'assumes the truth of the allegations in a complaint···unless controverted by undisputed facts in the record'…The basis for this Court's jurisdiction is intertwined with the basis for plaintiffs' substantive claims because both are based on the ADA. Accordingly, **defendants are not entitled to an evidentiary hearing**") (citation omitted) (emphasis added).

Cross has alleged all she needs to at this stage of the litigation to establish Article III standing. To establish standing, a plaintiff bears the burden of showing: (1) injury-in-fact, or the invasion of a legally protected interest, that is both (a) concrete and particularized, and (b) actual or imminent; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that a favorable decision will regress the wrong. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992).

---

[3]     Cross has attached a copy of this Order to her Request for Judicial Notice for the convenience of the Court.

-17-

1    In order to establish standing under the ADA for injunctive relief, "[Plaintiffs]

2   must demonstrate that [they have] suffered or [are] threatened with a concrete and

3   particularized legal harm, coupled with a sufficient likelihood that [they] will again be

4   wronged in a similar way." *Bird v. Lewis & Clark College,* 303 F.3d 1015, 1019 (9th

5   Cir. 2002) (quotations and citations omitted).  A plaintiff can establish injury-in-fact by

6   showing that she has encountered barriers at a place of public accommodation and that

7   she intends to return to the public accommodation if it is made accessible. *Pickern v.*

8   *Holiday Quality Foods, Inc.,* 293 F.Supp.3d 1133, 1138 (9th Cir. 2002); *see also Molski*

9   *v. Price,* 2244 F.R.D. 479, 483 (C.D. Cal. 2004).

10    Cross' complaint does exactly all that is required.  It alleges that plaintiff Diane

11   Cross is a paraplegic due to an automobile accident and due to this impairment, uses a

12   wheelchair when traveling about in public. *See* Complaint ¶ 17.  Ms. Cross alleges that

13   upon visiting the defendants' facilities, she encountered barriers – both physical and

14   intangible – that interfered with, if not outright denied, her ability to use and enjoy in a

15   full and equal manner the goods, services, privileges, and accommodations offered by

16   these facilities, and she took pains to list such barriers in her Complaint. *See* Complaint

17   ¶ 28, *et al.*  She alleges that she suffered injury-in-fact because she patronized

18   defendants' stores that discriminated against her by failing to provide full and equal

19   access to their goods and services, failing to make alternations in such a manner that the

20   altered portions of the facility are readily accessible and usable by individuals with

21   disabilities, failing to remove architectural barriers and failing to modify practices,

22   policies and procedures in violation of 42 U.S.C. § 12812(a), among other pled statutes.

23   *See* Complaint ¶¶ 80-449.   Finally, plaintiff Cross also states that she is currently

24   deterred from visiting the subject stores – even though she would like to – due to her

25   knowledge of the barriers and the future threats of injury and discrimination caused by

26   these barriers. *See* Complaint ¶¶ 31, 36, 41, 46, 51, 56, 61, 66, 71, 76.  Without

27   question, these allegations satisfy the first element necessary to establish standing.

28

-18-

1    The second element of standing requires that there be a causal connection

2 between a plaintiff's injury and the defendant's conduct. *Lujan*, 504 U.S. at 560. 42

3 U.S.C. § 12182(a) expressly holds "any person who owns, leases (or leases to), or

4 operates a place of public accommodation" liable for ADA noncompliance. 42 U.S.C. §

5 12182(a). Cross has alleged that defendants own, operate, license, franchise, and/or do

6 business as the subject retail establishments and that defendants discriminated against

7 her by violating federal and state laws. *See* Complaint ¶¶ 7-17, 80-449. Therefore,

8 Cross has established the second element of standing.

9    Lastly, a plaintiff must show that the requested relief is available to redress the

10 claimed injury. *Lujan*, 504 U.S. at 560. Under the ADA, injunctive relief is available

11 to any person who is being subjected to discrimination on the basis of disability. 42

12 U.S.C. § 12188(a)(1). As discussed above, Cross has sufficiently alleged that

13 defendants' conduct constitutes ADA violations and that Cross has been subject to

14 discrimination on the basis of disability because of those violations. Therefore, as

15 injunctive relief is available under the ADA, and such relief would redress her injuries,

16 Cross has established the third element of standing. Accordingly, this Court should

17 find that Cross has established the standing necessary to pursue an ADA cause of

18 action.

19    Defendants' argument for an evidentiary hearing at this stage of litigation is

20 without merit.

21 ///

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28

-19-

1

### III. CONCLUSION

2    Cross apologizes for the length of her opposition, but defendants brought up

3    multiple arguments, one of which, based on *Gunther v. Lin*, required extensive analysis

4    so that the Court was fully apprised of the issues.

5    Defendants' arguments are without merit across the board.  Cross respectfully

6    requests that this Court deny defendants' motion in its entirety.

7

8    Dated: May 10, 2007                 DISABLED ADVOCACY GROUP, APLC

9

10                                         /s/ Lynn Hubbard, III

11                                         LYNN HUBBARD, III
                                           Attorney for Plaintiff Diane Cross

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-20-