**EXHIBIT 3**

1  Lynn Hubbard, III, SBN 69773
2  Scottlynn J Hubbard, IV, SBN 212970
3  **DISABLED ADVOCACY GROUP, APLC**
   12 Williamsburg Lane
4  Chico, CA 95926
5  (530) 895-3252

6  Attorneys for Plaintiff, A.J. OLIVER

9              UNITED STATES DISTRICT COURT,
10            SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| A.J. OLIVER,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>GMRI, INC dba RED LOBSTER #0521,<br><br>　　　　Defendant. | Case No. 07cv1719 IEG (WMc)<br><br>**PLAINTIFF'S OPPOSITION to DEFENDANT GMRI, INC.'s MOTION to DISMISS PLAINTIFF'S STATE LAW CLAIMS PURSUANT to 28 U.S.C. 1367(c)**<br><br>Date:　November 13, 2007<br>Time:　10:30 a.m.<br>Room:　Courtroom 1, 4th Floor<br><br>**Honorable Irma E. Gonzalez** |

**EXHIBIT 3**

# TABLE OF CONTENTS

I. Introduction .................................................................................................. 1-2

II. Discussion .................................................................................................... 2-14

    A. Defense Counsel is Only Party That Profits From Dismissal of State Law Claims ....................................... 2-3

    B. Oliver Has Pled Intent in His Complaint ............................... 3-4

    C. *Gunther* Misinterpreted the Current Law as Well as the Statutes at Issue ........................................................ 4-10

        1. *Gunther* is Not Controlling & Contradicts Ninth Circuit Law ...................................................... 4-5

        2. Legislative History ........................................................ 5-8

            i. Plain Language ........................................................ 9

        3. The State Claims Do NOT Present Novel or Complex Issues of Law ........................................ 9-10

    D. Even Without a Statutory Analysis, *Gunther* is Wrong on the Law ...................................................... 10-15

III. Conclusion ................................................................................................... 16

# TABLE OF AUTHORITIES

Cases

*Burks v. Poppy Construction Co.*,
  (1962) 57 Cal.2d 463 .................................................................................................15

*Digenova v. State Bd. Of Educ.*,
  57 Cal.2d 167, 178 (1962) .......................................................................................5 n.1

*Gunther v. Lin*,
  50 Cal.Rptr.3d 317 (Cal.App.2006) ........................................................... 1, 5-14

*Harris v. Capital Growth Investors XIV*,
  (1991) 52 Cal.3d 1142 ............................................................................... 6, 11-14

*In re Watts*,
  298 F.3d. 1077 (9th Cir. 2002) ..................................................................................5

*Isbister v. Boys' Club of Santa Cruz*,
  (1985) 40 Cal.3d 72 ..................................................................................................15

*Johnson v. Barlow*,
  2007 WL 1723617 (E.D.Cal) ...................................................................................10

*Kimmel v. Goland*,
  51 Cal.3d 202 (1990) ..................................................................................................7

*Koire v. Metro Car Wash*,
  (1985) 40 Cal.3d 24 .......................................................................................... 11-14

*Lentini v. California Center for the Arts, Escondido*,
  370 F.3d 837 (9th Cir. 2004) ............................................................................ 2-5, 10

*Modern Development Co. v. Navigators, Ins. Co.*,
  (2003) 4 Cal.Rptr.3d 528 ................................................................................ 11-13

*Pinnock v. Solana Beach Do It Yourself Dog Wash, Inc.*,
  2007 WL 1989635 (S.D.Cal.) ...................................................................................10

*Takahashi v. Loomis Armored Car Serv.*,
  625 F.2d 314 (9th Cir. 1980) .................................................................. 5
*Wells v. One2One Learning Found.*,
  29 Cal. 4th 1164 (2006) ........................................................................ 9
*Western Oil & Gas Assn. V. Monterey Bay Unified Air Pollution Control Dist.*,
  (1989) 49 Cal.3d 408 ............................................................................ 7
*Wilson v. Haria and Gogri Corp. dba Jack-In-The-Box #551, et al.*,
  479 F.Supp.2d 1127 (E.D.Cal.2007) ................................................ 4-10

Statutes

Cal. Civ. Code § 51 .................................................................................. 6-8

Cal. Civ. Code § 51(f) ............................................................................. 8, 15

Cal. Civ. Code § 52 .................................................................................. 6-9

28 U.S.C. § 1367 .................................................................................... 9-10

42 U.S.C. § 12182(b)(2)(A)(iv) ................................................................. 13

## INTRODUCTION

Defendant GMRI, Inc. dba Red Lobster #0521 (hereinafter "Red Lobster") has filed a motion to dismiss plaintiff A.J. Oliver's state claims. To support its argument, defendant argues that the state law claims raise novel and complex issues of California law. Furthermore, Red Lobster relies on a recent decision from a state appellate court, in the case of *Gunther v. Lin*, for the bulk of its argument. The issues presented by Oliver's state claims are neither novel nor complex, as a multitude of federal judges within California have repeatedly found in cases with similar facts. Additionally, defendant's reliance on *Gunther* is misplaced; it is a misreading and misinterpretation of both the plain language of the statutes at issue, the intent of the California legislature (as revealed through an examination of the statute's legislative history), and it plainly contradicts not only California Supreme Court precedent, but Ninth Circuit precedent as well, <u>which this Court is bound by</u>. It is, in short, an anomaly.

Furthermore, plaintiff hopes to persuade this Court that it is not in fact faced with irreconcilable authorities in the guises of *Gunther* and *Lentini*, in light of a recent, and very thorough, analysis of the very same issue by Senior Eastern District Court Judge Lawrence Karlton.

Finally, and most importantly, this Court need not dismiss Oliver's state claims even if it believes that under *Gunther* intent is required for a violation of the Unruh Act to be found for the simple reason that *Oliver has pled intent in his Complaint,* and deserves the right to prove up such intent with litigation.

## II. DISCUSSION

### A. The Only Party That Profits From Dismissing the State Claims is Defense Counsel

From a purely pragmatic approach, Oliver wishes to point out that the only party that would profit from this Court's dismissing the state claims is defense counsel. By splitting the case into two (2) cases – one in federal court, and one in state court – plaintiff would have the extra burden of litigating two distinct cases that, for all intents and purposes, are identical in the facts and law. The same goes for the defendant as well – it would find itself defending essentially identical arguments in two courts.

Who in fact would profit from this? Defense counsel, who would be required to defend – and therefore bill for – two separate cases.

### B. This Court Does Not Face a Hobson's Choice as Oliver Has Pled Intent in His Complaint and Has a Right to Prove Up Such Intent

Red Lobster argues that the recent case of *Gunther v. Lin*, 144 Cal.App.4th 223 (4th Dist. 2006), has changed the landscape of Unruh Act claims. Defendant argues that since *Gunther* requires intent in order to obtain statutory damages under the Unruh Act, and as such holding directly conflicts with the Ninth Circuit's opposition holding in *Lentini v. Calif. Cntr. For the Arts, Escondido*, 370 F.3d 837 (9th Cir. 2004), the "tension" between *Gunther* and *Lentini* requires this Court to decline supplemental jurisdiction over Oliver's state claims. *See* Defendant's Motion for the Court to Decline Supplemental Jurisdiction Over and to Dismiss Plaintiff's State Law Claims (hereinafter "Defendant's Motion"), pp. 4-5.

The gist of defendant's argument seems to be that this Court has no choice but to dismiss the state claims as there is a conflict between the Ninth Circuit and a state appellate court. However, this conflict centers

around the issue of *intent*, and on this topic (quite apart from the misguided decision in *Gunther*, as discussed *infra*) this Court need not make any decision regarding the state claims at this early stage of the litigation.

This is so because Oliver <u>has actually pled intent in his Complaint</u> (*see* Complaint, Docket Item #1, ¶ 14), and basic notions of equity mean that Oliver deserves a chance to prove that the defendant intended to discriminate against disabled persons. It is simply too early to dismiss the state claims when Oliver has not even had a chance to show this Court that intent is present – regardless of whether it is required or not. If this Court agrees that *Gunther* requires intent, then Oliver has pled it, and has the right to prove it up. If this Court disagrees with *Gunther* and finds that it is bound by *Lentini*, absolutely no harm is done by Oliver pursing a showing of intent to discriminate by Red Lobster.

Either way, this Court need not dismiss Oliver's state claims.

### C. <u>*Gunther* Misinterpreted the Current Law, as Well as the Statutes at Issue, and This Court is Not Bound by a State Appellate Court Decision</u>

Apart from the preceding argument – that this Court need not make an either-or Hobson's Choice at this point in the litigation – Red Lobster relies on a case that is misguided at best, and completely off the rails at worst.

Recently, in the Eastern District, Senior District Court Judge Lawrence Karlton offered a thorough and succinct analysis of the *Gunther* case, and whether it should be interpreted to mean that Unruh Act requires intent, even when an ADA violation has been proven. This analysis, which takes apart *Gunther* bit by bit, is eminently applicable here, and is a strong and reasoned counterpoint to the recent decision in the *Cross* case cited by defendants.

*Oliver v. Red Lobster*, Case No. 07cv1719 IEG (WMc)
**Plaintiff's Opposition to Defendant's Motion to Dismiss Plaintiff's State Law Claims**
Page 7

### 1. *Gunther is Not Controlling and it Directly Contradicts Prior Ninth Circuit Law*

As the California Supreme Court recently declined to hear the appeal of *Gunther*, the decision of the California appellate court in *Gunther* is <u>not controlling on a federal court</u>. *See Wilson v. Haria and Gogri Corp.*, 479 F.Supp.2d 1127, 1136 (E.D.Cal.2007). Rather, "a federal court sitting in diversity must use its own best judgment to predict how the [California Supreme] court would decide the issue." *Id.* at 1135, citing *Takahashi v. Loomis Armored Car Serv.*, 625 F.2d 314, 316 (9th Cir. 1980).

Judge Karlton properly noted that *Gunther* directly contradicts the Ninth Circuit case of *Lentini v. Calif. Cntr. For the Arts*, 270 F.3d 837, 847 (9th Cir. 2004), which held that because a disabled plaintiff need not prove discriminatory intent under the ADA, plaintiffs also need not prove discriminatory intent under the Unruh Act, since the California legislature amended the Act to incorporate the ADA standards of liability.[1]

Judge Karlton then framed the issue as follows: Whether, therefore, a federal court is bound by *Lentini*, or is obligated to reconsider *Lentini* in light of *Gunther*? As Judge Karlton then observed, answering this question was not necessary, as a statutory and legislative history analysis of the Unruh Act convincingly shows that *Gunther* is not the law of the state, and federal courts are free to disregard intermediate state court decisions where there is "convincing evidence" that the state's highest court would decide differently. *Id.* at 1136, citing *In re Watts*, 298 F.3d 1077, 1083 (9th Cir. 2002).

---

1   Furthermore, this Court cannot presume that merely because California's highest court declined to hear the *Gunther* appeal, *Gunther* is the law of the land. A denial of review may occur for many reasons: for example, a lack of appellate split on the issue at the present time. Such denial therefore cannot be taken as California's Supreme Court's approval of *Gunther*. *See Digenova v. State Bd. Of Educ.* 57 Cal.2d 167, 178 (1962).

1  Oliver will now discuss this "convincing evidence."

2  **2.  *Legislative History***

3  As Judge Karlton noted in *Wilson*, *Gunther's* [legal] reasoning is "flawed from the outset," because the linchpin of the *Gunther* court analysis is its assertion that the Unruh Act is comprised <u>solely</u> of Calif. Civil Code section 51. *See Wilson*, at 1137, *citing Gunther v. Lin*, 50 Cal.Rptr.3d 317, 320 (Cal.App. 4 Dist., 2006). However, asserting that the Unruh Act consists only of section 51 would mean that the enforcement section of the Unruh Act – Calif. Civil Code section 52 – is *not* part of the Unruh Act. This inconsistency is not explained – or reasonably dealt with – by the *Gunther* court. Indeed, as Judge Karlton noted in *Wilson*, even the case that *Gunther* so heavily relies upon, *Harris v. Capital Growth Investors XIV*, 52 Cal.3d 1142 (1991), acknowledges that the Unruh Act encompasses **both** sections 51 *and* 52. *See Wilson*, at 1137, *citing Harris*, 52 Cal.3d at 1172 (where the *Harris* court stated that section 52 is "the language of the Act").

Therefore, when the California legislature in 1992 amended the Unruh Act to incorporate the ADA at section 51(f), there can be no doubt that the legislature also intended that victims of ADA discrimination would be entitled to the remedies provided by the enforcement section of section 52 – that is, the Legislature intended to amend the *entire Act*.

Simply put, sections 51 and 52 cannot be divorced – they both comprise the Unruh Act. Yet *Gunther's* analysis attempts to do just that. Under *Gunther*, an ADA violation is a violation of the Unruh Act, but section 52 does not apply unless intent is proven. Again, as the *Wilson* court succinctly and eloquently explained, this is flawed reasoning. If section 51 was amended by the Legislature to include the standards of liability of the ADA – which clearly does not require discriminatory intent

1  – then section 52 was obviously part of this amendment process. Therefore there is no intent required when an ADA violation is shown in order to trigger section 52's enforcement provision.

Simply put, if *Gunther's* analysis is correct – section 51 can be amended without any effect on section 52 – then the California's Legislature's amending of the Unruh Act to include violations of the ADA **is rendered completely meaningless**.

Indeed, a logical conclusion of *Gunther's* analysis is a *de facto* **repeal** of the Legislature's action; that is, a repeal of the Legislature's amending of the Unruh Act. It is well-established that such repeal or revocation of legislative acts through judicial decision is frowned upon – there is a "strong presumption against implied appeal." *Western Oil & Gas Assn. V. Monterey Bay Unified Air Pollution Control Dist.*, (1989) 49 Cal.3d 408, 419. *Gunther* does exactly that – it essentially repeals the Legislature's action of amending the Unruh Act to incorporate violations of the ADA.

This became even clearer when Judge Karlton extensively reviewed the history of the amendment in *Wilson* – <u>what, exactly, did the California Legislature intend</u>? This is essential, because California's Supreme Court has explained that analysis of state statutes begins with "the fundamental premise that the objective of statutory interpretation is to *ascertain and effectuate legislative intent.*" *Kimmel v. Goland*, 51 Cal.3d 202, 208 (1990) (emphasis added).

As usual, Judge Karlton's finding regarding the California Legislature's intent is clear and to the point:

> The legislative history of Section 51(f) reveals an intent to include **unintentional** disability discrimination within the scope of the Unruh Act. The Assembly Committee on

> Judiciary report on AB 1077 (as amended January 2, 1992, p.2) stated that the bill would: 'Make a violation of the ADA a violation of the Unruh Act. Thereby providing persons injured by a violation of the ADA with the remedies provided by the Unruh Act (e.g., right of private action for damages).'

*Wilson*, at 1137-38 (emphasis added). Judge Karlton also noted that the California Senate Committee on Judiciary evinced the same intent:

> [T]his bill would make a violation of the ADA a violation of the Unruh Act. Thereby providing persons injured by a violation of the ADA with the remedies provided by the Unruh Act (e.g., right of private action for damages, including punitive damages).

*Id.*, n.14. In neither of these statements do either the Assembly or Senate Committee state – or even imply – that somehow the standards of ADA liability, where no showing of discriminatory intent is required, would somehow be changed so that the intent requirement of Cal. Civ. Code section 52 would be the new standard, or that, conversely, intent would still be required under the Unruh Act even though none is required under the ADA.

Logically, and legally, *Gunther* makes no sense. It leaves the very real scenario of a disabled plaintiff proving an ADA violation, and therefore an Unruh violation, but yet not able to avail himself to the remedies of the Unruh Act unless intent is proven. This completely undermines the purpose of the legislature's amending of the Act, which obviously was to **broaden the scope of the Unruh Act** to include violations of the ADA against disabled persons. (And it goes without saying that this also undermines the standards of ADA liability, where correcting

*benevolent inaction* is just as important as correcting intentional discriminatory actions, and why, therefore, a showing of intent is not required.) If no remedy under the Unruh Act is available unless intent is shown, then the legislature's action would truly be "all bark and no bite."[1]

       *i.    Plain Language*

Judge Karlton continued to eviscerate *Gunther* by applying the analyses of liberal construction and other canons of statutory construction (*see Wilson*, at 1138 – 1141), but, as usual, the simplest is almost always the most powerful.

Under any objective view, by applying the doctrine of "plain meaning," or assigning the "usual and ordinary meanings" of words to the statute at issue (*see Wells v. One2One Learning Found.*, 29 Cal. 4th 1164, 1170 (2006)), the amended language of the Unruh Act could not possibly be clearer: "A violation of any right of any individual under the [ADA] shall also constitute a violation of this section." Cal. Civ. Code § 51(f). Full stop, and end of story. If the ADA is violated, then the Unruh Act (which as discussed above, includes section 52) is violated as well, with no further inquiry into intent necessary or required.

Again, if this is not the case – that is, if the ADA can be violated but not the Unruh Act, as laid bare by the *Gunther* analysis – then the California legislature's 1992 amending of the Unruh Act is meaningless.

**3.    *Simply Put, the State Claims Do NOT Present Novel or***

---

[1] Also of importance to the legislative history is a letter to the author of the amendment bill that directly addressed the issue of intent, and which complained that the amendment provided disabled persons injured by the ADA with the remedies of the Unruh Act, with no intent required. *See Wilson*, at 1138. This letter clearly had no impact on the amendment. Thus, the author of the bill was in fact well aware that amending the Unruh Act as planned meant that a violation of the ADA was a violation of the Unruh Act with all remedies of said Act available, <u>regardless of intent</u>. Indeed, this is what the author of the bill – as well as the Senate and Assembly – <u>intended</u>.

*Oliver v. Red Lobster*, Case No. 07cv1719 IEG (WMc)
Plaintiff's Opposition to Defendant's Motion to Dismiss Plaintiff's State Law Claims

*Complex Issues of Law*

In short, Oliver's state claims do not present novel or complex issues of law necessitating the rejection of supplemental jurisdiction pursuant to 28 U.S.C. § 1367. Recently, another Eastern District court also analyzed this exact issue, and came to the same conclusion as the court in *Wilson*. In *Johnson v. Barlow*, 2007 WL 1723617 (E.D.Cal), Eastern District Court Judge William Shubb stated:

> This conflict [as allegedly presented by *Gunther*] **does not represent the sort of "novel and complex issue of unresolved state law" contemplated by 28 U.S.C. § 1367(c) (1)**. Section 1367(c)(1) exists so that district courts need not "resolve difficult questions of [state] law." *Medrano v. City of Los Angeles*, 973 F.2d 1499, 1506 (9th Cir.1992) (citing *Moor v. Alameda County*, 411 U.S. 693, 715-16, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973)). When state law is substantially unsettled, a district court may be left without sufficient guidance as to how to resolve a dispute, which weighs against exercising supplemental jurisdiction. *Moor*, 411 U.S. at 716. **In this case, however, the conflict internal to the Unruh Act is *not* novel-it has been litigated and decided by the Ninth Circuit in *Lentini*, and this court is legally bound to follow Ninth Circuit authority.** *Hart v. Massanari*, 266 F.3d 1155, 1175 (9th Cir.2001) ("A district court bound by circuit authority ... has no choice but to follow it, even if convinced that such authority was wrongly decided.").

*Johnson*, 2007 WL 1723617 at 2 (bold emphasis added, but not italics). *See also Pinnock v. Solana Beach Do It Yourself Dog Wash, Inc.*, 2007 WL 1989635, *3) (S.D.Cal.) (Slip Copy).

In short, Red Lobster's reliance on *Gunther* is misplaced.

**D.   Even Without a Statutory Analysis, Gunther is WRONG on the Law**

Finally, this Court need not even rely on the thorough analysis by Judge Karlton in *Wilson* in order to reject *Gunther's* holding. Plainly stated, there is no requirement of intent to discriminate under either state or federal law, the *Gunther* case notwithstanding. (Of course, this is even a truer statement when considered in light of the statutory analysis of the Unruh Act, as discussed *supra*.)

First, there is a distinction between (1) **intentional conduct** on the one hand and (2) **discriminatory intent** on the other hand. They are not the same and should not be confused or conflated. There are four published decisions that need to be harmonized to understand the state of the law with respect to the Unruh Civil Rights Act. Those cases are: *Harris v. Capital Growth Investors XIV*, (1991) 52 Cal.3d 1142, 278 Cal.Rptr. 614, 805 P.2d 873; *Koire v. Metro Car Wash* (1985) 40 Cal.3d 24, 707 P.2d 195, 219 Cal.Rptr. 133; *Modern Development Co. v. Navigators, Ins. Co.* (2nd Dist. 2003) 111 Cal.App.4th 932, 4 Cal.Rptr.3d 528; and *Gunther v. Lin*.

Again, when analyzed in light of a proper statutory analysis of the Unruh Act – one that takes into account the all-important intent of the California Legislature – these cases do not conflict with each other, and also do not conflict with *Lentini*. The *Harris* case, in particular, is relevant because it is the case upon which *Gunther* relies, and it seemingly conflicts with an earlier California Supreme Court case, *Koire*.

First, let us begin with the highest authority on state law. The California Supreme Court has ruled that there is **no need to establish discriminatory intent under the Unruh Civil Rights Act.** See *Koire v. Metro Car Wash* (1985) 40 Cal.3d 24, 707 P.2d 195, 219 Cal.Rptr. 133. In *Koire*, the plaintiff was challenging the practice of a car wash in providing for cheaper car washes for women on "ladies days" and,

therefore, discriminating against men on those days. The trial court found "no intent" to exclude or to make men "feel unwelcome, unaccepted or undesired." *Koire*, 40 Cal.3d at 33. But the California Supreme Court, found a violation of the law and pointed out that: "**discriminatory *intent* is not required by the Unruh Act** . . . Plaintiff was entitled to equal treatment, no matter what his sex, and *regardless of defendants' intent in denying him equal treatment*." *Id.* (emphasis added, internal quotations removed). There could not be a more clear statement of the law: **There is no need to establish an intent to exclude**. See also *Lentini v. California Center for the Arts, Escondido*, 370 F.3d 837, 847 (9th Cir. 2004) ("We find that . . . no showing of intentional discrimination is required where the Unruh Act violation is premised on an ADA violation.")

Given this clear statement of the law by the California Supreme Court (and the Ninth Circuit in *Lentini*), one must then ask how we harmonize the subsequent California Supreme Court holding in *Harris v. Capital Growth Investors XIV* (1991) 52 Cal.3d 1142 (and upon which the *Gunther* court so heavily relied, and by extension Red Lobster in the instant motion), that, "the language of the Act suggests that intentional acts of discrimination, not disparate impact, was the object of the legislation" or "the damages provision . . . reveals a desire to punish intentional and morally offensive conduct" or "we hold that a plaintiff seeking to establish a case under the Unruh Act must plead and prove intentional discrimination in public accommodations in violation of the terms of the Act. A disparate impact analysis or test does not apply to Unruh Act claims." *Id.* at 1172 and 1175.

A key to harmonizing the statement, "**discriminatory intent is not required**" (*Koire*) with "**a plaintiff must prove intentional discrimination**" (*Harris*) was revealed in a published decision that has had

great practical impact in these ADA/Unruh cases: *Modern Development Co. v. Navigators, Ins. Co.* (2nd Dist. 2003) 111 Cal.App.4th 932, 4 Cal.Rptr.3d 528. In *Modern Development*, the court was faced with this very question: what is intentional conduct under the ADA and the Unruh Civil Rights Act? (The court needed to resolve this question in order to decide whether the defendant insurance company had a duty to defend: If the conduct of plaintiff Modern Development was accidental, the company had a duty to defend; if intentional, then no duty to defend.) The *Modern Development* court found that "as a matter of law" the inaccessible restrooms were "intentional conduct" and reasoned:

> The complaint alleged that the Swap Meet failed to comply with various antidiscrimination laws relating to the disabled and that because of the resulting lack of access he was injured. These events are not covered events under The Policy because they do not constitute "accidents" or "occurrences" as such terms are defined in the Policy. As argued by Navigators, Moreno's alleged injuries were caused by the architectural configuration of the Swap Meet and Modern Development's alleged failure to remove architectural barriers, not by an accident. **The Swap Meet intended for the bathrooms to be configured as they were.** The result is that the incident involving Mr. Moreno is not a covered event.

Id. at 941. Thus, under *Modern Development*, a plaintiff does not need to prove that the defendant harbored some sort of *animus* towards the disabled. Instead, the intentional discrimination required under the law (i.e. under *Harris*) is <u>the intention to present the architectural layout as it exists</u> (discriminatory or not). In *Modern Development*, the court found that such intent was present based on the architectural configuration of the Swap Meet. This finding jibes with both *Koire* ("discriminatory intent is

1  not required") and *Harris* ("a plaintiff must prove intentional
2  discrimination").
3      In fact, this fits the statutory scheme perfectly. Under the Americans
4  with Disabilities Act, it is an act of discrimination to "fail to remove"
5  certain barriers. *See* 42 U.S.C. § 12182(b)(2)(A)(iv). The Unruh Civil
6  Rights Act has incorporated that provision and, therefore, the failure to
7  remove certain barriers is a violation of the Unruh Civil Rights Act. *See*
8  Cal. Civ. § 51(f). In light of the *Koire/Harris/Modern* trifecta, we should
9  say that it is a violation of the Unruh Civil Rights Act where there is an
10 *intentional* decision to not remove barriers, or, similarly, an intention to
11 present the architectural layout as it exists.
12     This harmonization does justice to each of the *Koire/Harris/Modern*
13 decisions. Moreover, it helps make sense of a poorly worded *Gunther*
14 decision. In *Gunther*, the plaintiff had complained about two violations:
15 (1) lack of wrapped plumbing and (2) a non-compliant mirror. After
16 considering the evidence, the *Gunther* court found that:

> There is also no question that defendant Lin never intended to violate the ADA. In his answer to Gunther's complaint Lin claimed that Gunther had entered the restroom "before our handyman had finished his work" of wrapping insulation around the pipe under the sink. Moreover, normally the restroom never has mirrors for anybody (because the mirror was subject to vandalism); an employee simply hung one by mistake.

24 Id. at *4.
25     Thus, because defendant Lin had *intended* that there be wrapped
26 plumbing and had *intended* that there not be any mirror, the "violations"
27 complained of by plaintiff Gunther were *un*intentional. In other words, the
28 "intentionality" addressed by the *Gunther* court deals with whether the

defendant intended its property to be the way that it was — not that defendant Lin had to desire to exclude persons with disabilities or treat them differently. In *Gunther*, the defendant did NOT intend that there be a mirror and did NOT intend that its plumbing be exposed and, therefore, the *Gunther* court found no violation.

In the present case, therefore, the parties must examine whether Red Lobster intended to maintain the subject properties without, *e.g.*, accessible parking, accessible paths of travel, and accessible restrooms (among other violations) since effective business start-up dates, or since enactment of the ADA. The question is *not* whether Red Lobster intended to specifically discriminate against disabled persons such as Oliver; that is, the question is not whether defendant possessed discriminatory animus. Rather, the question is whether Red Lobster <u>intended</u> to design the subject property in its current state, which design happens to deny full and equal access to disabled persons such as Oliver.

Oliver urges this Court to reject the narrow and self-serving interpretation urged by Red Lobster and interpret the law consistent with the published decisions, as well as based on sound canons of statute construction, as explicated by *Wilson*. Regarding the Unruh Civil Rights Act, the California "Legislature's desire to banish [discrimination] from California's community life has led [the California Supreme Court] to interpret the Act's coverage '**in the broadest sense reasonably possible**.'" *Isbister v. Boys' Club of Santa Cruz,* (1985) 40 Cal.3d 72, 75-76, 219 (emphasis added), *quoting Burks v. Poppy Construction Co.,* (1962) 57 Cal.2d 463, 468, 20.

After all, it is in the spirit of interpreting the Act's coverage "in the broadest sense reasonably possible," that the Honorable Judge Karlton stated: "Furthermore, the court finds that the issue of state law presented

by the instant action is not particularly novel or complex in light of the overwhelming body of case law finding that proof of intent is not required [under the Unruh Act when an ADA violation is show]." *Wilson*, at 1138 n.15. *Gunther* is an aberration, not the law.

### III. CONCLUSION

For the foregoing, Oliver respectfully requests that this Court continue to exercise supplemental jurisdiction over his state claims.

First, if this Court is inclined to follow *Gunther* and require a proof of intent, Oliver has pled the necessary intent, and has a right to prove up such intent through litigation. This Court need not make a Hobson's Choice regarding supplemental jurisdiction over Oliver's state law claims at this juncture.

Secondly, *Gunther* is not the law; it is rather an incorrect interpretation of both existing state and federal law, as well as a misinterpretation of both the Unruh Act and the Legislature's intent when that august body acted to amend the Unruh Act. It is an aberration in the face of an overwhelming body of cases that is contrary to its holding.

Finally, Oliver apologizes for the length of his Opposition, but felt such a thorough analysis was needed in light of the importance of the underlying issues.

DATED: October 23, 2007        DISABLED ADVOCACY GROUP APLC

/s/ Lynn Hubbard, III
LYNN HUBBARD, III